UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

--------------------------------------------------------------------------------X

MARY DEMATTEO,                                              Civ. No.: 2:17-cv-4023

                  Plaintiff,

                                        **COMPLAINT**

      -against-

GIIR AMERICA, INC.,                                        Plaintiff Demands A
LG AD INC. d/b/a HS AD INC., and                            Trial By Jury
CHRISTOPHER KAMPF, individually,

                  Defendants.

--------------------------------------------------------------------------------X

     Plaintiff, MARY DEMATTEO (hereinafter referred to as "Plaintiff" and/or

"DEMATTEO"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby

complains of Defendant GIIR AMERICA, INC. (hereinafter referred to as "GIIR"), Defendant

LG AD, INC. d/b/a HS AD INC. (hereinafter referred to as "HS AD") and Defendant

CHRISTOPHER KAMPF (hereinafter referred to as "KAMPF") (hereinafter collectively

referred to as "Defendants"), upon information and belief as follows:

## NATURE OF CASE

1.   Plaintiff MARY DEMATTEO complains pursuant to Title VII of the Civil Rights Act of

    1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the

    Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and to remedy violations of

    the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental

    jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S.

    715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to

    redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender

    discrimination, together with sexual harassment, hostile work environment, and retaliation

by Defendants.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.  Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4.  On or about August 22, 2016, Plaintiff filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5.  On or about March 7, 2017 Plaintiff received a Right to Sue Letter from the EEOC.

6.  Plaintiff has satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7.  Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8.  Plaintiff MARY DEMATTEO is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, hostile work environment and retaliation.

9.  Plaintiff is an individual woman who is a resident of the State of New Jersey in the County of Bergen.

10. Defendant GIIR AMERICA, INC. is domestic limited liability companies duly existing by the virtue of the laws of the State of New Jersey, which does business in the State of New

Jersey.

11. Defendant LG AD INC. d/b/a HS AD INC. is a foreign for-profit corporation duly existing by the virtue of the laws of the State of New Jersey, which does business in the State of New Jersey.

12. Defendant LG AD INC. d/b/a HS AD INC. is a full-service in-house advertising agency serving the LG Electronics network on a global level with offices in Seoul, New York, Los Angeles, Toronto, Beijing, Shanghai, Tokyo, Bangkok, New Delhi, London, Dusseldorf, Moscow, Kiev, Sao Paulo, Dubai and Sydney.

13. At all times material, Plaintiff was employed by Defendant GIIR AMERICA, INC. and Defendant LG AD INC. (hereinafter collectively referred to as "Defendants").

14. At all times material, Defendant CHRISTOPHER KAMPF (hereinafter referred to as "KAMPF") was a manager for Defendant HSAD.

15. At all times material, KAMPF had supervisory authority over Plaintiff with regard to her employment.

## STATEMENT OF MATERIAL FACTS

16. In or around February of 2016, Defendants hired Plaintiff as a Social Media Manager.

17. Shortly thereafter, KAMPF began a pattern and practice of sexual harassment towards Plaintiff.

18. In or around late March of 2016, KAMPF requested to be "friends" with Plaintiff on the social media outlet, Facebook.

19. KAMPF's "friend request" lacked professional motive, as KAMPF had requested access to Plaintiff's personal Facebook account through this "friend request."

20. KAMPF also hunted for, and discovered Plaintiff's personal Instagram account, where

Plaintiff had shared personal photographs and archived personal memories, including photos of her past body building competitions.

21. KAMPF began to "follow" Plaintiff's Instagram account, where he could see any photographs Plaintiff posted and he could comment on them.

22. KAMPF's recent authority as Plaintiff's supervisor compelled Plaintiff to accept the Facebook "friend request," from KAMPF and to allow him to have access to Plaintiff's Instagram account.

23. KAMPF spent a considerable amount of time going through Plaintiff's personal Instagram photos, and even pulled specific photos of Plaintiff to express his personal satisfaction with her body.

24. In fact, on numerous occasions, KAMPF sought out DEMATTEO in the office and showed DEMATTEO her own photographs, exclaiming, "Hey! Wow!" gesturing to the photos, which he had readily available on his phone. KAMPF pressed further about Plaintiff DEMATTEO's body, and told her what kind of lingerie would look best on Plaintiff, and what colors would go with Plaintiff's body.

25. KAMPF spoke of buying Plaintiff lingerie on a number of occasions.  Plaintiff immediately declined and responded, "I don't like that" and "I don't like when people buy things for me."

26. Considering the outrageous comments, Plaintiff became uncomfortable with KAMPF's comments and motives behind looking at her photos. Plaintiff began to suffer from anxiety and depression and the work environment turned hostile.

27. KAMPF noticed that Plaintiff was getting uncomfortable, KAMPF smirked and told Plaintiff that he had been kidding throughout the conversation and followed up with, "don't

sue me."

28. On or about April 20, 2016, during a work call, KAMPF commented that Plaintiff's underwear was showing.  Later, KAMPF sent Plaintiff a private message on Facebook stating, "by the way…nice red undies."

29. Following the incident on April 20, 2016, KAMPF would frequently ask Plaintiff what color underwear she was wearing.  Plaintiff would simply change the subject of the conversation and try to move past the harassing question.

30. Defendants discriminated against Plaintiff on the basis of her sex/gender.

31. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

32. On one occasion, KAMPF commented to Plaintiff "women are cruel…I know how women work" and immediately followed up with, "don't sue me."

33. Shortly thereafter, Defendant KAMPF escalated the nature and frequency of his sexual advances.

34. In or around May 2016, on numerous occasions KAMPF touched Plaintiff's leg and commented on how he liked her pants.  Plaintiff immediately rebuffed KAMPF's offensive touching.

35. In or about May of 2016, KAMPF told Plaintiff that he had done something he was not proud of and had "made out with an 18 year old girl."  Plaintiff responded that he should just not do it in the future and KAMPF said, "the whole time I was thinking about you."

36. Plaintiff was mortified and felt violated by KAMPF's comment.

37. Defendants discriminated against Plaintiff on the basis of her sex/gender.

38. Defendants sexually harassed Plaintiff and subjected Plaintiff to a hostile work

environment on the basis of her sex/gender.

39. On or about July 17, 2016, Plaintiff sent KAMPF a message about the successful results of a marketing campaign, as KAMPF was on vacation.  KAMPF responded, "it's better right?"  Plaintiff responded, "take a compliment!"  KAMPF then replied, "I don't know how to. I'd take a kiss though."

40. On or about August 2, 2016, during a conference call in a small conference room, KAMPF began to rub Plaintiff's back.  Plaintiff was mortified and froze in place.  KAMPF stopped rubbing Plaintiff's back and began speaking with another person on the conference call. KAMPF then began rubbing the back of Plaintiff's neck and Plaintiff's fears were realized when she felt KAMPF kiss her on her neck.

41. Plaintiff felt violated, as she had rebuffed KAMPF's sexual advances and harassment, yet he persisted against her will.

42. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

43. As Plaintiff's supervisor, KAMPF used his authority to prey upon Plaintiff and created an environment in which Plaintiff was afraid to complain for fear of being terminated or retaliated against.

44. In fact, on one occasion KAMPF even showed Plaintiff a harshly worded warning letter he had sent to another employee, in an attempt to intimidate Plaintiff.

45. In or about May of 2016, Plaintiff had a conversation with Defendant's employee, JOHN PRICE, in which she informed him of the sexual harassment perpetrated by KAMPF.

46. At all times material, JOHN PRICE (hereinafter referred to as "PRICE") was and is the creative director for Defendant HSAD.

47. At all times material, JOHN PRICE had supervisory authority over Plaintiff with regard to her employment.

48. PRICE indicated that KAMPF had a history of sexual harassment and that he would speak with KAMPF if Plaintiff wanted him to, and that she could come to him in the future if the harassment continued.

49. Each time Plaintiff rebuffed KAMPF's sexual advances and harassment in an explicit manner, KAMPF would retaliate against Plaintiff by harshly critiquing her work, and insisting that Plaintiff work late hours.

50. On or about August 8, 2016, Plaintiff filed a formal complaint with Defendant detailing the sexual harassment, gender discrimination and retaliation.

51. Shortly thereafter, on or about August 18, 2016, Plaintiff's supervisor CHRISTIE BILLIN shared a text exchange with Plaintiff in which Supervisor BILLIN discouraged Plaintiff from seeking legal recourse.

52. Plaintiff's supervisor BILLIN's behavior was in an effort to scare and deter Plaintiff from engaging in any protected activity.

53. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-

pecuniary losses.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

57. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### TITLE VII
### (AGAINST DEFENDANT GIRR & HSAD)

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . .."

60. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with causing a hostile work environment based on the same.

61. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

62. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## TITLE VII
## (AGAINST DEFENDANT GIRR & HSAD)

63. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

    paragraphs of this Complaint as if more fully set forth herein at length.

64. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that

    it shall be unlawful employment practice for an employer:

    "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any

    practice made an unlawful employment practice by this subchapter, or because [s]he has

    made a charge, testified, assisted or participated in any manner in an investigation,

    proceeding, or hearing under this subchapter."

65. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et

    seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of

    employment because of her opposition to the unlawful employment practices of

    Defendants.

66. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## DISCRIMINATION
## (AGAINST ALL DEFENDANTS)

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the

    above paragraphs of this Complaint as if more fully set forth herein at length.

68. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in

    pertinent part as follows:

    "It shall be an unlawful employment practice, or, as the case may be, an unlawful

discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by discriminating against the Plaintiff because of her sex/gender, together with causing a hostile work environment based on the same.

70. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

71. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### UNDER NEW JERSEY STATE LAW
### RETALIATION
### (AGAINST ALL DEFENDANTS)

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

"For any person to take reprisals against any person because that person has opposed any

practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

74. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, constructively discharging Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

75. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING
## (AGAINST ALL
## DEFENDANTS)

76. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice:

"For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

78. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

79. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A SIXTH CAUSE OF ACTION
### UNDER NEW JERSEY STATE LAW
### NEGLIGENCE

80. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. At all times material, Defendants were negligent in the hiring, firing, retention and supervision of the subject harasser, Defendant KAMPF.

82. Defendants owed Plaintiff a duty to provide Plaintiff with a reasonably safe environment.

83. Defendants breached their duties to Plaintiff and as a result Plaintiff was damaged in an amount to be determined at the time of trial.

### JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, attorneys fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:   New York, New York
         June 5, 2017

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

Zack Holzberg, Esq.
30 Broad Street, 35th Floor
New York, NY 10004
(212) 587-0760